

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-31-1995

# Booker v Taylor Milk Company

Precedential or Non-Precedential:

Docket 94-3503

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Booker v Taylor Milk Company" (1995). *1995 Decisions*. Paper 240.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/240

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


Nos. 94-3503 & 94-3525


LEATCH BOOKER, III,

v.

TAYLOR MILK COMPANY, INC.; RUSSELL MORGAN;
TIMOTHY M. GARCIA; DIANE PETCASH;
JOSEPH S. TAYLOR; PHIL F. RICHARDSON;
DICK RICHARDSON; RICHARDSON & ASSOCIATES

Leatch Booker, III,
Appellant in No. 94-3503 and
Cross-appellee in No. 94-3525

Taylor Milk Company, Inc.,
Appellant in No. 94-3525 and
Cross-appellee in No. 94-3503



Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ No. 91-cv-02021)



Argued June 13, 1995


Before: STAPLETON, MCKEE and SEITZ, Circuit Judges.

Filed: August 31, 1995




Vaughn A. Booker, Esquire (Argued)
28 Douglass Road
Suite A-1
Woodbrook Circle
Lansdale, Pennsylvania 19446

Attorney for Appellant

John A. McCreary, Jr., Esquire (Argued)
Henry L. Clement, III, Esquire
Volk, Robertson & Hellerstedt
Three Gateway Center
15th Floor East
Pittsburgh, Pennsylvania 15222

    Attorneys for Appellee

**OPINION OF THE COURT**

**SEITZ, <u>Circuit Judge</u>.**

    Leatch Booker, III ("Plaintiff") was unlawfully terminated by Taylor Milk Company, Inc. ("Defendant"). As a result of this discharge, Plaintiff was awarded, <u>inter</u> <u>alia</u>, back pay; however, his request for prejudgment interest on the award was denied. First, both Plaintiff, on appeal, and Defendant, in its cross-appeal, challenge the district court's order awarding back pay. Second, Plaintiff appeals from the order of the district court denying his request for prejudgment interest. The finding of unlawful termination is not challenged on appeal. The district court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## I. <u>FACTS</u>

    Plaintiff, an African American, was employed as a probationary laborer and dock handler by Defendant. Prior to the end of his period of probation, Plaintiff was terminated. Thereafter, he instituted this action against Defendant, and a number of other individuals (not involved in this appeal), alleging that his discharge was racially motivated. After a bench trial, the district court entered judgment for Plaintiff

finding that his discharge was racially motivated and violative of Title VII of the Civil Rights Act of 1964, see 42 U.S.C. §§ 2000e to 2000e-17.

In its judgment, the district court concluded that Plaintiff was entitled to, inter alia, back pay. Although it awarded back pay, it reduced that sum by the amount it found Plaintiff could reasonably have earned elsewhere during the layoff period.[1] Thereafter, Plaintiff made a motion for prejudgment interest on this back pay award, which was denied by the district court.

Plaintiff filed a timely appeal and Defendant a timely cross-appeal from the district court's orders.

## II. DISCUSSION

Plaintiff argues on appeal that the district court erred in finding that he essentially failed to mitigate damages after his discharge and in calculating the amount of the back pay award. In addition, Plaintiff argues that the district court abused its discretion in denying his motion for prejudgment interest. In its cross-appeal, Defendant contends that because the court concluded that Plaintiff failed to fully mitigate damages as required by the statute, he is not entitled to any back pay. We turn first to the district court's order awarding Plaintiff certain back pay.

### A.   The Back Pay Award

---

[1] In addition, the district court subtracted "interim earnings," which Plaintiff had earned in the various "odd jobs" he held over a four-year period between the wrongful discharge and his reinstatement with Defendant.

If a district court finds that an employer has engaged in an unlawful employment practice, Title VII authorizes, inter alia, a back pay award. See 42 U.S.C. § 2000e-5(g)(1); see also Loeffler v. Frank, 486 U.S. 549, 558 (1988). As explained by the Loeffler court, the back pay award authorized by Title VII "is a manifestation of Congress' intent to make `persons whole for injuries suffered through past discrimination.'" Id. (quoting Albemarle Paper Co. v. Moody, 422 U.S. 405, 421 (1975)); see Squires v. Bonser, 54 F.3d 168, 172 (3d Cir. 1995). Despite a presumption in favor of a back pay award, see Albemarle Paper Co., 422 U.S. at 421, successful Title VII claimants have a statutory duty to mitigate damages. See Robinson v. SEPTA, Red Arrow, 982 F.2d 892, 897 (3d Cir. 1993).

## 1. Plaintiff's Duty to Mitigate Damages

A successful claimant's duty to mitigate damages is found in Title VII: "Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e-5(g)(1); see Ellis v. Ringgold Sch. Dist., 832 F.2d 27, 29 (3d Cir. 1987), cert. denied, 494 U.S. 1005 (1990). Although the statutory duty to mitigate damages is placed on a Title VII plaintiff, the employer has the burden of proving a failure to mitigate. See Robinson, 982 F.2d at 897; Anastasio v. Schering Corp., 838 F.2d 701, 707-08 (3d Cir. 1988). To meet its burden, an employer must demonstrate that 1) substantially equivalent work was available, and 2) the Title

VII claimant did not exercise reasonable diligence to obtain the employment. See id. at 708.

Whether or not a claimant has met his duty to mitigate damages is a determination of fact, which is subject to the clearly erroneous standard of review. See Robinson, 982 F.2d at 897; Ellis, 832 F.2d at 29. In this case, the district court found that Defendant had established Plaintiff's failure to mitigate damages by a preponderance of the evidence and reduced the back pay award by the amount it found Plaintiff could reasonably have earned during the relevant period.

In support of its finding, the district court stated that "Defendant's Exhibit 14 and other evidence establishes [sic] that minimum wage jobs were available in the relevant job market for which Plaintiff was qualified. Plaintiff did not apply and would have been hired if he did." Appendix at 91a. Defendant's Exhibit 14 covers thirty-three months of the Beaver County Times' ("Times") Sunday help-wanted section following Plaintiff's discharge. The court did not specifically indicate what "other evidence" supported its conclusion. Although the record is somewhat sparse, it is clear that the district court found from the record that 1) Plaintiff was not reasonably diligent in an effort to secure employment, and 2) there were substantially equivalent positions available. We address these findings.

### a) Reasonable Diligence

The reasonableness of a Title VII claimant's diligence should be evaluated in light of the individual characteristics of the claimant and the job market. See Tubari Ltd., Inc. v. NLRB,

959 F.2d 451, 454 (3d Cir. 1992). Generally, a plaintiff may satisfy the "reasonable diligence" requirement by demonstrating a continuing commitment to be a member of the work force and by remaining ready, willing, and available to accept employment. See Hutchison v. Amateur Elec. Supply, Inc., 42 F.3d 1037, 1044 (7th Cir. 1994); Ford v. Nicks, 866 F.2d 865, 873 (6th Cir. 1989).

Plaintiff testified that he read the help-wanted ads in the Times every Sunday and "constantly and continuously searched for employment." Appendix at 23a-2 to 23a-3, 25a. In addition, following his discharge, Plaintiff did earn approximately $2,000 a year doing "odd jobs." Id. at 23a-1 ("handyman, painting, putting up fences, whatever"). Plaintiff also pointed out that he remained active with the Beaver Falls Job Service ("Job Service"), a local employment agency. However, Plaintiff testified that in the three and one-half years following his discharge, he had failed to submit any employment applications in response to the Times ads and had only one job interview. See id. at 23a-2, 27a-28a. Plaintiff has attempted, both during trial and on appeal, to explain his efforts.

First, Plaintiff stated that most companies will not accept job applications unless they are sent through the Job Service. However, there is no evidence in the record to support Plaintiff's statement. Furthermore, Defendant produced a number of help-wanted ads, which seem to be soliciting applications directly without reference to the Job Service.

In addition, Plaintiff argues that "[a]n examination of the grouping of advertisements [in Exhibit 14] reveals that the

vast majority of the listings are those of employment agencies and temporary agencies." Plaintiff's Br. at 10. Because a number of agencies may list the same job and some list jobs so as to establish a file of available personnel, he maintains, merely counting the listings may serve to count the same job more than once. Although some of the listings are from agencies, Plaintiff did not point to any ads which posted the same position or which listed a position that was, in actuality, not available. Further, Plaintiff did not support his statements concerning the temporary agencies' policies. In fact, Plaintiff testified that in the past, he obtained employment through a temporary agency.

Although a plaintiff's efforts need not be successful, he must exercise good faith in attempting to secure a position. See Reilly v. Cisneros, 835 F. Supp. 96, 99-100 (W.D.N.Y. 1993). Here, it appears that Plaintiff did little more than register with the Job Service and look through the help-wanted ads. See EEOC v. Service News Co., 898 F.2d 958, 963 (4th Cir. 1990) ("Looking through want ads for an unskilled position, without more, is insufficient to show mitigation, and the back pay award should accordingly be reduced."); Truskoski v. ESPN, Inc., 823 F. Supp. 1007, 1015 (D. Conn. 1993) ("A ritualistic compliance with the unemployment administrator's work search requirement does not necessarily constitute a reasonably diligent search for suitable employment."). Under the circumstances, Plaintiff's conduct following the unlawful discharge does not appear to demonstrate his continuing commitment to be a member of the work force. Cf. Odima v. Westin Tucson Hotel, 53 F.3d 1484, 1497 (9th

Cir. 1995); <u>Sellers v. Delgado College</u>, 902 F.2d 1189, 1195 (5th Cir. 1990); <u>Gallo v. John Powell Chevrolet, Inc.</u>, 779 F. Supp. 804, 814 (M.D. Pa. 1991). Thus, the district court's conclusion that Plaintiff failed to exercise reasonable diligence does not appear to be clearly erroneous.

However, Plaintiff maintains that the <u>Times</u> help-wanted listings include postings for laborers, assembly workers, and factory workers, which are not "substantially equivalent" to his former position. He argues that because they are not "substantially equivalent" he was under no duty to apply for these positions, and therefore, they should not be considered sufficient proof of his failure to mitigate damages. We address that argument.

### b) Substantially Equivalent Employment

The duty of a successful Title VII claimant to mitigate damages is <u>not</u> met by using reasonable diligence to obtain <u>any</u> employment. Rather, the claimant must use reasonable diligence to obtain <u>substantially equivalent employment</u>. See <u>Ford Motor Co. v. EEOC</u>, 458 U.S. 219, 231-32 (1982); <u>Anastasio</u>, 838 F.2d at 708. "Substantially equivalent employment is that employment which affords virtually identical promotional opportunities, compensation, job responsibilities, and status as the position from which the Title VII claimant has been discriminatorily terminated." <u>Sellers</u>, 902 F.2d at 1193; <u>see Mitchell v. Humana Hospital-Shoals</u>, 942 F.2d 1581, 1583 n.2 (11th Cir. 1991); <u>Ford</u>, 866 F.2d at 873.

The record demonstrates that Defendant employed Plaintiff as a "laborer" and "dock handler."  In those positions, he was essentially an unskilled worker who loaded and unloaded trucks and coolers.  Defendant's Exhibit 14 includes numerous postings for laborers, general laborers, light labor positions, and movers.  Although most of the postings do not include information about specific job responsibilities, benefits, and promotional opportunities, but see, e.g., Appendix at 36a, 43a, 65a, it is clear that on the whole, the positions would not require Plaintiff to "go into another line of work, accept a demotion, or take a demeaning position." Ford Motor Co., 458 U.S. at 231. But see Tubari Ltd., Inc., 959 F.2d at 458-59 (stating that it is reasonable for an unskilled worker to have accepted a wide range of work); id. at 456-57 (explaining that as time wears on, plaintiff may be required to lower his sights).  Furthermore, to the extent it is indicated, the compensation for the positions is substantially similar to Plaintiff's previous pay. Cf. Ellis, 832 F.2d at 30.

The listings in Exhibit 14 appear to be substantially similar to Plaintiff's previous positions with Defendant. Therefore, the district court did not err in considering the exhibit as evidence of Plaintiff's failure to mitigate damages.

We are bound to accept the findings of the district court unless we are left with a definite and firm conviction that a mistake has been committed. See In re Cohn, 54 F.3d 1108, 1113 (3d Cir. 1995).  After reviewing the record, we conclude that the district court's finding that Defendant had proven Plaintiff's

failure to mitigate damages by a preponderance of the evidence is not clearly erroneous.

In its cross-appeal, Defendant argues that because Plaintiff failed to mitigate damages, he is not entitled to any back pay. We turn now to that issue.

## 2. Defendant's Cross-appeal

Defendant argues that because Plaintiff failed to mitigate damages to some extent, he wholly forfeits the right to back pay under Title VII. The district court rejected Defendant's "no mitigation-no backpay" argument. Because this issue involves the interpretation of section 2000e-5, our review is plenary. See Johnson & Johnson-Merck v. Rhone-Poulenc Rorer, 19 F.3d 125, 127 (3d Cir. 1994).

The plain language of section 2000e-5 shows that amounts that could have been earned with reasonable diligence should be used to reduce or decrease a back pay award, not to wholly cut off the right to any back pay. See 42 U.S.C. § 2000e-5(g)(1); see also Tubari Ltd., Inc., 959 F.2d at 453-54; Anastasio, 838 F.2d at 708-09; 2 DAN B. DOBBS, LAW OF REMEDIES § 6.10(4), at 221-22 (2d ed. 1993). Furthermore, Defendant's "no-mitigation-no back pay" argument is inconsistent with the "make whole" purpose underlying Title VII.

As explained supra, back pay is designed to restore a victim of discrimination to the economic position he would have enjoyed absent the unlawful discrimination. The Supreme Court has instructed that "given a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied

generally, would not frustrate the central statutory purposes of [Title VII]." See Albemarle Paper Co., 422 U.S. at 421. Here, the district court found that even had Plaintiff successfully mitigated his damages, he would still not have been made "whole" absent the award of some back pay. Based on the evidence before it, the district court concluded that the amount Plaintiff could have earned in a substantially equivalent position would have been less than what he would have earned in Defendant's employ. Thus, a denial of all back pay under the circumstances would frustrate the make-whole purpose underlying Title VII.

Defendant's reliance on the Supreme Court's decision in Ford Motor Co. is misplaced. In that case, the Court was addressing the following issue: "[W]hether an employer charged with discrimination in hiring can toll the continuing accrual of backpay liability under . . . Title VII simply by unconditionally offering the claimant the job previously denied, or whether the employer also must offer seniority retroactive to the date of the alleged discrimination." See Ford Motor Co., 458 U.S. at 220 (footnote omitted). Under that situation, a plaintiff can entirely, or nearly, mitigate any loss by accepting the job once denied, and, further, that rule satisfies Title VII's second goal—to end unlawful discrimination. In the present case, there was no "Ford offer," and, as the district court found, even with reasonable diligence, Plaintiff could not have wholly mitigated damages. This fact distinguishes his case from others where plaintiffs failed to seek jobs that would have compensated them completely for their losses and elected to remain unemployed. See

<u>Hopkins v. Price Waterhouse</u>, 920 F.2d 967, 981-82 (D.C. Cir. 1990); <u>Cowan v. Prudential Ins. Co. of America</u>, 852 F.2d 688, 690 (2d Cir. 1988).[2]

We conclude that the district court was correct as a matter of law in rejecting Defendant's "no mitigation-no backpay" argument and in awarding Plaintiff back pay where it was necessary to make him whole.  Although Plaintiff was granted back pay, he argues that the district court abused its discretion in calculating the amount of the award.

### 3. Calculation of Back Pay

As stated, the district court reduced Plaintiff's back pay award by the amount he could have earned with reasonable diligence.  In calculating this amount, the district court turned to Defendant's Exhibit 14 -- the <u>Times</u> help-wanted ads.  The district court found that substantially equivalent positions were

---

[2]Defendant's reliance on <u>Phelps Dodge Corp. v. NLRB</u>, 313 U.S. 177 (1941) and its progeny is also misplaced.  In <u>Phelps</u> the Court stated, "Since only actual losses should be made good, it seems fair that <u>deductions</u> should be made not only for actual earnings by the worker but also for losses which he willfully incurred." <u>Id.</u> at 198 (emphasis added).  Reading on, we think that by "losses willfully incurred," the Court was referring to "wages that might have been earned." <u>See</u> <u>id.</u>  Therefore, <u>Phelps</u> could fairly be read as holding that a deduction from back pay awards should be made for those earnings which could have been earned with reasonable diligence.

In addition, we are unpersuaded by Defendant's citation to our decision in <u>Carden v. Westinghouse Elec. Corp.</u>, 850 F.2d 996 (3d Cir. 1988).  First, the <u>Carden</u> court cites <u>Ford Motor Co.</u> in support of its holding.  As we have explained in the text, <u>Ford Motor Co.</u> does not support Defendant's "no mitigation-no backpay" argument.  Second, as we read <u>Carden</u>, it seems to support the position that a plaintiff's failure to mitigate damages, as with a plaintiff who has "interim earnings," results in a reduction in the back pay award. <u>See</u> <u>id.</u> at 1006.

available and paid between $5.00 and $12.00 per hour. It set $8.50 per hour as an average and used it to calculate the set off. In addition, the court included overtime hours in its calculation. We review the district court's back pay calculation for an abuse of discretion. See Shore v. Federal Express Corp., 42 F.3d 373, 377-78 (6th Cir. 1994); Robinson, 982 F.2d at 898.

Plaintiff argues that the district court abused its discretion in computing his back pay award. He maintains that the back pay order is contrary to its Findings of Fact and Conclusions of Law. In its findings, the court stated, "Defendant's Exhibit 14 and other evidence establishes that minimum wage jobs were available . . . ." Appendix at 91A. (emphasis added). Plaintiff contends that the court was bound to use the minimum wage, and not the higher wage actually used, in reducing his back pay award.

The evidence indicates that a number of substantially similar positions were available, and those positions paid more than minimum wage. Although the district court stated that "minimum wage" positions were available, the record supports its decision to use a higher wage. We conclude that the district court did not abuse its discretion in calculating Plaintiff's back pay and the set off.

Finally, Plaintiff argues that the district court erred in not awarding prejudgment interest on this award. We turn now to that issue.

### B. Prejudgment Interest

The determination of whether to award prejudgment interest in a Title VII case is committed to the sound discretion of the district court. See Robinson v. SEPTA, Red Arrow, 982 F.2d 892, 897 (3d Cir. 1993). Generally, a court of appeals will not overturn the district court's determination of the appropriateness of a prejudgment interest award absent an abuse of discretion. See Gelof v. Papineau, 829 F.2d 452, 456 (3d Cir. 1987); see also Hadley v. VAM P T S, 44 F.3d 372, 376 (5th Cir. 1995). The district court is deemed to have abused its discretion only when the reviewing court is firmly convinced that a mistake has been made. See Shore v. Federal Express Corp., 42 F.3d 373, 380 (6th Cir. 1994).

Here, the district court denied Plaintiff's motion for prejudgment interest. In its order the district court recited in relevant part:

> IT IS ORDERED that the motion be and hereby is denied for the following reasons:
> . . . .
> 2. Interest on the back-pay and damage calculations is not appropriate in this case due to the conduct of plaintiff following [Defendant's] illegal employment decision . . . ;
> 3. The conduct of plaintiff contributed to an inflated claim for back-pay and therefore the equities do not weigh in favor of awarding pre-judgment interest on the damage award;
> 4. Plaintiff did not suffer from the loss of the use of funds during the relevant period; and
> 5. The award of back-pay and the damage calculations are fair, reasonable and appropriate under the circumstances, without more.

Plaintiff's Br. at 28-29. Although the district court is not specific, the parties agree that the "conduct" referred to by the

district court is Plaintiff's failure to mitigate damages. See id. at 19; Defendant's Br. at 15.

Title VII authorizes prejudgment interest as part of the back pay remedy in actions against private employers. See Loeffler v. Frank, 486 U.S. 549, 557 (1988).  As with the back pay award, prejudgment interest helps to make victims of discrimination whole. See Green v. USX Corp., 843 F.2d 1511, 1530 (3d Cir. 1988).  The award of prejudgment interest is compensatory in nature; it serves to compensate a plaintiff for the loss of the use of money that the plaintiff otherwise would have earned had he not been unjustly discharged. See Chandler v. Bombardier Capital, Inc., 44 F.3d 80, 83 (2d Cir. 1994); Berndt v. Kaiser Aluminum & Chemical Sales, Inc., 789 F.2d 253, 259 (3d Cir. 1986).

This court has stated, "To fulfill this [make-whole] purpose, prejudgment interest should be `given in response to considerations of fairness [and] denied when its exaction would be inequitable.'" Green, 843 F.2d at 1531 n.16 (quoting Board of Comm'rs of Jackson County v. United States, 308 U.S. 343, 352 (1939)) (second alteration in original).  This language has been interpreted as supporting a strong presumption in favor of awarding prejudgment interest, except where the award would result in "unusual inequities." See id.; Brock v. Richardson, 812 F.2d 121, 127 (3d Cir. 1987); see also Barbour v. Merrill, 48 F.3d 1270, 1279 (D.C. Cir. 1995).  Accordingly, a district court may exercise its discretion to depart from this presumption only

when it provides a justification that reasonably supports the departure.

In the present case, the district court found that the award of back pay <u>alone</u> wholly compensated Plaintiff, and that, because Plaintiff's conduct contributed to an inflated back pay claim, the equities weighed against prejudgment interest. Furthermore, it concluded that Plaintiff did not suffer the loss of the use of funds following the unlawful discharge.

We agree with those courts that have held that a plaintiff's failure to mitigate damages, <u>alone</u>, is insufficient to overcome the presumption in favor of a prejudgment interest award. <u>See, e.g.</u>, <u>Hutchison v. Amateur Elec. Supply, Inc.</u>, 42 F.3d 1037, 1047-48 (7th Cir. 1994); <u>Donnelly v. Yellow Freight Sys., Inc.</u>, 874 F.2d 402, 411 (7th Cir. 1989). First, Plaintiff's reduced back pay award reflects his failure to mitigate damages. Second, even had Plaintiff met his duty to mitigate losses, he would not be made whole absent an award of some back pay. Because Plaintiff was entitled to some back pay as a result of his unlawful termination, under the present circumstances he is entitled to prejudgment interest for the loss of the use of the amount included in the back pay award.

We find, therefore, that the district court's conclusion was not consistent with a sound exercise of discretion.

### III. <u>CONCLUSION</u>

For the foregoing reasons, we will affirm the August 8, 1994 order of the district court awarding Plaintiff certain back

pay.  We will reverse the August 22, 1994 order of the district court denying Plaintiff's request for prejudgment interest on the back pay award and direct the entry of an appropriate amount.