Alfred MARINELLI, Plaintiff,

v.

CITY OF ERIE, Defendant.

Civil Action No. 94–39Erie.

United States District Court,
W.D. Pennsylvania.

Nov. 5, 1998.

676

William Taggart, Nichol, Brill & Taggart, Erie, PA, for Plaintiff.

Christine R. Ferguson, Erie, PA, for Defendant.

## OPINION

COHILL, Senior District Judge.

Plaintiff Alfred Marinelli was injured during the course of his employment as a shift crew worker for the City of Erie ("the City"), and sustained injuries to his left shoulder, arm, and hand. He subsequently filed this action against his employer under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, alleging failure to reasonably accommodate his physical impairment. We bifurcated the question of liability under the ADA from damages, and the case proceeded to trial.

A jury found that the City had intentionally discriminated against Mr. Marinelli, under the ADA, because it failed to make a reasonable accommodation to his disability. On special interrogatories, the jury determined that the City became aware of the plaintiff's need for accommodation on November 17, 1992, that it failed to make a good faith effort to reasonably accommodate Mr. Marinelli's injuries, and that the defendant did not prove that Mr. Marinelli failed to mitigate his damages. The jury awarded Mr. Marinelli $85,-000 in compensatory damages.

Following the jury verdict, we inadvertently granted defendant's motion to certify the judgment for appeal, and the verdict was appealed to the Court of Appeals for the Third Circuit before damages were determined. The appellate court remanded for lack of jurisdiction. *Marinelli v. City of Erie*, 135 F.3d 765 No. 96–3078 (3d Cir.1997).

On February 3, 1998, this Court held a bench trial to determine the plaintiff's entitlement to front pay, back pay, prejudgment and postjudgment interest, costs, and attorney's fees. Testifying for the plaintiff were Lorette Eggleston, a representative from the Pennsylvania Office of Vocational Rehabilitation ("OVR"); George Joseph, one of the plaintiff's attorneys, and Mr. Marinelli. Assistant City Solicitor Christine Ferguson testified on behalf of the City of Erie. The parties filed proposed findings of fact and conclusions of law, and were given an opportunity to file supplemental pleadings after trial.

This Court has jurisdiction under Section 107(a) of the ADA, 42 U.S.C. § 12117, and Section 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(f)(3) ("Title VII").

Pursuant to Rule 52 of the Federal Rules of Civil Procedure, we now issue the following findings of fact and conclusions of law on the damages portion of this action.

## I. Findings of Fact

### A. Backpay

In accordance with the jury's verdict, any award of back pay will be measured from November 17, 1992, the date on which the City became aware that the plaintiff needed an accommodation. The end date for any award of back pay shall be the date of the verdict: August 29, 1996.

Mr. Marinelli's employment with the City of Erie was governed by a collective bargaining agreement ("CBA") between the defendant City and General Teamsters Local 397. Pl.'s Ex. 24. The parties agree that any back pay may be properly calculated in accordance with the terms of that agreement.

The City of Erie offered the plaintiff a position as a stockroom attendant in February of 1996. Mr. Marinelli declined to accept this position. Testimony regarding the position and the plaintiff's refusal was presented to the jury.

At the time of his accident, Mr. Marinelli had some college credits. We find credible the testimony of Lorette Eggleston, who has been Mr. Marinelli's vocational counselor at the Pennsylvania OVR, that the individualized written rehabilitation program she developed with the plaintiff included course work at Edinboro University. Pl.'s Ex. 26. OVR provides counseling to disabled work-

er's compensation claimants, as well as funding to assist in retraining and further education. OVR has provided the plaintiff with financial aid for his tuition.

Mr. Marinelli has been enrolled as a full-time student at Edinboro University since the fall of 1995, and, at the instant trial, testified that he expected to graduate in May of 1998 with teaching credentials. Mr. Marinelli further testified that he is not interested in reinstatement with the City of Erie, and plans to pursue a career teaching social sciences to secondary school students.

### B. Worker's Compensation

Mr. Marinelli has been receiving worker's compensation benefits in the amount of $307.60 per week since January 18, 1991, with a brief hiatus during an appeal. The City has contested this award at various times during this litigation, and Mr. Marinelli has retained attorney George Joseph to represent him with his worker's compensation claim. Since July of 1995, attorney Joseph's fee has been deducted from the plaintiff's worker's compensation check and paid directly to Mr. Joseph. The attorney's fee is 20% of Mr. Marinelli's worker's compensation benefits; thus, the plaintiff receives 80% or $246.14 per week.

### C. Benefits

During the course of his employment with the City of Erie, health insurance for Mr. Marinelli and his family was paid for by his employer. This coverage was terminated on February 1, 1993. The plaintiff then maintained health insurance coverage through a Teamsters' group policy for 36 months. A different health insurance policy was in effect from February through April of 1996. Since May 20, 1996, health insurance provided by Mr. Marinelli's wife's employer has covered the plaintiff. The evidence shows that Mr. Marinelli spent a total of $18,119.59 for health insurance coverage during the period at issue here. Pl.'s Ex. 29.

### II. Conclusions of Law and Discussion

The ADA provides for all remedies available under Title VII, which includes backpay and front pay or reinstatement. Relief under federal employment discrimina-

tion statutes is equitable in nature, and thus within the sound discretion of the trial court.

### A. Backpay

Back pay is intended to make "persons whole for injuries suffered through past discrimination." *Booker v. Taylor Milk Co., Inc.*, 64 F.3d 860, 864 (3d Cir.1995), quoting *Loeffler v. Frank*, 486 U.S. 549, 558, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988). Where there is a finding of discrimination, there is a presumption that back pay should be awarded. *Booker*, 64 F.3d at 864. A successful Title VII claimant has a statutory duty to mitigate damages. *Robinson v. SEPTA, Red Arrow*, 982 F.2d 892,2 897 (3d Cir.1993). The employer, however, has the burden of proving a failure to mitigate, through evidence that (1) substantially equivalent work was available, and (2) that the claimant did not exercise reasonable diligence to obtain the employment. *Booker*, 64 F.3d at 864. The City of Erie clearly did not meet this burden.

Special interrogatory number eight required the jury to make the following specific finding on the question of mitigation: "Has the defendant, City of Erie, proved to you by a preponderance of the evidence that plaintiff failed to mitigate his damages?" The jury answered "No." (Doc. 59). By Order dated October 28, 1996 we denied the City's motion for judgment as a matter of law or for a new trial, and let stand the jury's verdict. Although the defendant again argues strenuously that Mr. Marinelli failed to mitigate his damages by choosing to continue his education and prepare for a teaching career, and we accept the jury's determination that he did not fail to mitigate.

To support its contention that a plaintiff fails to mitigate his damages and cannot recover lost wages if he chooses to attend college instead of searching for a job, the City cites *Wehr v. Burroughs*, 619 F.2d 276 (3d Cir.1980) and *Keller v. Connaught, Inc.*, 1997 WL 56925 (E.D.Pa.), an unreported case. We note that these decisions involve an award of front pay, and not back pay, but will address them here as the defendant raises them on the issue of mitigation in its discussion of both back pay and front pay.

Both *Keller* and *Wehr* were brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and are clearly distinguishable from the case before us. In *Keller,* the court determined that the plaintiff, who alleged she had been discharged because of her age, had discontinued her search for comparable employment by enrolling as a full-time student and taking herself out of the labor force after her discharge. Since she had failed to mitigate her damages, the court held that she was not entitled to an award of front pay. *Wehr* held that the plaintiff was not entitled to an award of front pay because he did not seek reinstatement to his former position. Although the plaintiff had entered law school after his discharge, the court did not determine whether this was evidence of failure to mitigate. In both of these ADEA cases, reinstatement to their former positions was a practical possibility for each plaintiff, since each could each still physically do the jobs from which each had been unlawfully discharged.

Mr. Marinelli, on the other hand, was permanently injured during the course of his employment. The crux of his ADA claim is that after the City knew an accommodation to his injury would be necessary, it failed to offer him substantially similar employment that accommodated his disability. The facts of this case preclude simple reinstatement to the plaintiff's former position, and thus *Keller* and *Wehr* are not controlling here. In addition, further distinguishing the facts of this case from those in *Keller,* there is no evidence that Mr. Marinelli refused an offer of comparable employment in order to continue his education, or that he removed himself from the job market.

As an individual who was injured in the course of his employment, Mr. Marinelli was eligible for worker's compensation; and, in addition to those funds, he was also entitled to avail himself of the counseling and educational retraining provided to worker's compensation claimants in accordance with the Vocational Rehabilitation Act. 43 P.S. § 682,-11; *Burgess v. W.C.A.B. (Plaza Foods),* 149 Pa.Cmwlth.13, 612 A.2d 542 (Pa.Cmwlth. 1992). This led to his enrollment at Edin-boro University. When the defendant failed to offer him substantially similar employment with an appropriate accommodation, Mr. Marinelli continued his studies. Under these circumstances, he did not fail to mitigate his damages.

■ Accordingly, we find that Mr. Marinelli is entitled to an award of back pay from November 17, 1992, the date on which the jury determined that the City became aware that the plaintiff needed an accommodation. The end date for the award of back pay shall be August 29, 1996, the date of the jury's verdict. The award of back pay shall be calculated in accordance with the terms of the CBA.

## B. Workers Compensation

Under the law of this case, Mr. Marinelli's worker's compensation must be deducted from any award of backpay. Order dated March 21, 1996, citing *Mason v. Association for Independent Growth,* 817 F.Supp. 550 (E.D.Pa.1993).

The plaintiff continues to disagree with this ruling. He further contends that only the net amount of his worker's compensation award should be deducted, since 20% of the award goes directly to pay Mr. Joseph's attorney's fees. The defendant argues that the full amount of the award must be deducted from any back pay this Court awards, and we agree. Any recovery of attorney's fees for litigating a worker's compensation claim must be adjudicated in accordance with the Pennsylvania Workmen's Compensation Act, 77 Pa.C.S. § 998. Such fees are not recoverable here as damages from the defendant under either Title VII or the ADA. Accordingly, we hold that the gross amount of Mr. Marinelli's worker's compensation award, or $307.60 per week, must be deducted from his backpay.

## C. Benefits

■ Health insurance premiums are compensable as part of a back pay award on an ADA claim, and the City of Erie does not dispute this point. Mr. Marinelli testified that the health insurance he received as a City employee ceased after two years, and that he subsequently paid $18,119.59 to ob-

tain coverage for himself and his family. Documentation of these expenses was provided at trial. Mrs. Marinelli's health care coverage has insured the family since May of 1996. As part of his back pay award, the plaintiff shall receive $18,119.59 as reimbursement for health care benefits.

With regard to any claim the plaintiff may have for social security and pension benefits, he has presented no evidence to establish any losses in either category. Should Mr. Marinelli decide to make the necessary employee contributions from his award of back pay, this Court will direct the City of Erie to make the corresponding employer contributions as well.

### D. Front Pay

Title VII permits the trial court, in its discretion, to grant an amount of future earnings, or front pay, in lieu of the traditional remedy of reinstatement. *Goss v. Exxon Office Systems Co.*, 747 F.2d 885, 890 (3d Cir.1984). Front pay is only intended to last for a reasonable future period, until the victim of discrimination can reestablish a place in the workforce. *Id.* at 889.

The City offered no proof that suitable employment opportunities were available for Mr. Marinelli, and the jury determined that he did not fail to mitigate his damages. Our reasons for finding that, on the facts of this case, enrolling in college does not mean that the plaintiff failed to mitigate his damages, have been stated at pages 5–7 *supra,* and we will not repeat them here.

An award of front pay in this case does not require that we speculate as to an appropriate endpoint. We will award the plaintiff front pay from the date of the verdict, August 29, 1996, until the beginning of the school year in which he expected to be available for employment as a teacher, or September 1, 1998. As with the award of back pay, the amount of front pay shall be computed in accordance with the applicable collective bargaining agreement, and shall be reduced by the gross amount of worker's compensation benefits the plaintiff has received during this time period.

### E. Interest

There is a strong presumption in favor of awarding prejudgment interest as part of the back pay remedy under Title VII. *Booker,* 64 F.3d at 868, citing *Brock v. Richardson,* 812 F.2d 121, 127 (3d Cir.1987). As with back pay, the purpose of awarding prejudgment interest is to make the plaintiff whole. *Booker,* 64 F.3d at 868. There is no general consensus as to how such interest should be calculated, and courts in this jurisdiction have tied their calculations to a variety of methods. *Taylor v. Central Pennsylvania Drug & Alcohol Services Corp.,* 890 F.Supp. 360, 361–62 (M.D.Pa.1995). The Court of Appeals for the Third Circuit has affirmed the use of the post-judgment interest statute, 28 U.S.C. § 1961(a), for the purposes of calculating prejudgment interest. *Sun Ship, Inc. v. Matson Navigation Co.,* 785 F.2d 59, 63 (3d Cir.1986).

We conclude that Mr. Marinelli should receive prejudgment interest on his back pay, and believe that the appropriate measure of prejudgment interest is set forth in the postjudgment statute, 28 U.S.C. § 1961(a). That rate is fixed as of the last auction of fifty-two week Treasury bills settled immediately prior to the date of judgment. We will direct that prejudgment interest in this action be so calculated.

We further conclude that Mr. Marinelli is entitled to postjudgment interest on the jury award of $85,000 in compensatory damages, and on his front pay award. Postjudgment interest on money judgments is to be determined pursuant to 28 U.S.C. § 1961(a).

### III. Attorney's Fees

We turn now to the question of attorney's fees in this case. Mr. Marinelli qualifies as the prevailing party under 42 U.S.C. § 2000e–5(k), adopted by § 107 of the ADA, 42 U.S.C. § 12117, and is therefore entitled to an award of reasonable attorney's fees and costs. The plaintiff has filed a motion and affidavit in support of his application for reasonable attorney's fees and costs (Doc. 87), and the defendant has filed its objections thereto. (Doc. 90). The plaintiff

seeks attorney's fees for attorney George Joseph, who represented Mr. Marinelli during the administrative phase of this trial, and for attorney William Taggart, who has represented the plaintiff in the ADA action in federal court.

The party seeking attorney's fees bears the burden of proving that its request for fees is reasonable, by submitting evidence of hours worked and rates claimed. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In a statutory fee case such as this, the party opposing the fee award may challenge the reasonableness of the requested fee. *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990). The trial court has great discretion to adjust a fee award in light of the objections, but may not decrease an award based on factors not raised by the adverse party. *Bell v. United Princeton Properties, Inc.,* 884 F.2d 713, 720–21 (3d Cir.1989).

To determine a reasonable fee, the court first assesses the number of hours reasonably spent on the litigation. *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. In making this determination, the court may exclude hours that are excessive, redundant, or otherwise unnecessary. *Id.* The court then multiplies the number of hours by what it concludes is a reasonable hourly rate. *Id.* An attorney's reasonable hourly rate is computed according to the prevailing market rates for similar litigation in the relevant community. *Rode,* 892 F.2d at 1183. This calculation yields the lodestar, which is presumed to be the reasonable fee for the litigation.

While the lodestar may be adjusted downward, to account for time spent litigating unsuccessful claims, the district court has very limited discretion to upwardly adjust this calculation. *Rode,* 892 F.2d at 1183–84. Under some circumstances, an upward adjustment may be made for delay in payment, for the quality of representation, or to reflect the difficulty of attracting compe-

tent counsel. *Id.* at 1184. This latter adjustment is often called a "contingency multiplier," and it is to be granted only in rare cases. *Id.,* citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (*Delaware Valley II* ).

With this legal framework in mind, we turn to the plaintiff's fee petition and the defendant's objections thereto.

### A. Attorney Taggart

### 1. Hours Reasonably Expended in Litigation

At the outset, we note that Attorney William Taggart has documented his hours with sufficient specificity to satisfy this Court. His petition states that he has expended 442 attorney hours and 66.03 paralegal hours through February 8, 1998. In its objections, the defendant has broken down Mr. Taggart's and his paralegal's day-to-day hours into general categories, and has raised a number of challenges to the reasonableness of these hours.[1] We find that several of the defendant's objections have merit, and will reduce Mr. Taggart's hours as follows:

The City objects to 9.85 hours spent on worker's compensation matters at Appendix F, and to 5.95 hours in Appendix J spent consulting with attorney George Joseph. The defendant argues that these hours are unnecessary and duplicative. We agree in part. It appears to the Court, however, that some of these hours were necessary to this litigation. The effect of plaintiff's worker's compensation claim remained an issue until the Court's ruling dated March 21, 1996, and some of the hours Mr. Taggart claims predate that ruling. Furthermore, the question of whether an award of back pay and/or front pay should be reduced by the net or gross amount of worker's compensation was an issue in the damages portion of this case.

Some of the hours claimed, though, are duplicative or unnecessary. Therefore we will

---

1. The City has categorized plaintiff's attorney's hours into several lettered Appendices to its brief in opposition to plaintiff's motion for fees and costs. While such a breakdown is not required in this Circuit, for convenience we will refer to these Appendices in assessing the merits of de-

fendant's objections. We note that while the plaintiff filed a supplemental brief on attorney's fees, it made no objection to the defendant's categorization of the hours expended in litigation.

reduce Mr. Taggart's hours on worker's compensation matters, as listed in Appendix F, from the 9.85 hours claimed to 4.00 hours.

We further agree with the defendant that some of the hours claimed at Appendix J, for conferring with attorney Joseph concern worker's compensation issues, and should be reduced as duplicative or redundant. We will reduce those hours from 5.95 to 2.00 hours.

■ The defendant also objects to 7.05 hours that it characterizes as "clerical tasks performed by counsel" at Appendix I. We agree with this objection. This Circuit has expressly disapproved of attorneys billing their usual rate for "matters easily delegable to non-professionals or less experienced associates." *Ursic v. Bethlehem Mines,* 719 F.2d 670, 677 (3d Cir.1983). The City of Erie should not be required to pay the prevailing market rate for Mr. Taggart's work on routine tasks, such as preparing subpoenas. The Court is aware that Mr. Taggart did not have the resources of a large law firm to assist him in preparing for this litigation. Nevertheless, he did have the aid of a paralegal, and has submitted a separate bill for the paralegal's hours for similar work, including the preparation of subpoenas. We find that such tasks are more properly billed at that lower rate. Accordingly, we will subtract these 7.05 hours from the attorney's total hours, and add them to the total hours for Mr. Taggart's paralegal to be billed at the paralegal's rate. Plaintiff claims that 52.53 hours of paralegal services; this addition brings that total to 59.58 hours and correspondingly reduces attorney Taggart's hours.

In all other respects, the City's objections to the hours claimed in attorney Taggart's fee petition shall be denied, and Mr. Taggart's petition shall be granted as to those hours not expressly reduced above.

### 2. Reasonable Hourly Rate

Attorney Taggart avers that his usual hourly rate for employment law cases is $110.00 per hour, and that he may charge "large volume user unions" a lower rate. Pl.'s Mot. at ¶ 15. He offers the affidavits of seven local attorneys, whose market rates for similar work average $137.85 per hour. Pl.'s

Mot. Ex. E–K. Based upon these affidavits, the plaintiff contends that a reasonable hourly rate for the work expended in this case should be "at least" $125.00 per hour for the attorney, and $35.00 per hour for paralegal work.

The City argues that the community market rate is irrelevant here. The defendant contends that the community market rate should be determined only where the litigation was performed by a public interest law firm, and reasons that since this action was litigated by a private attorney we must use that attorney's usual fee of $110.00 per hour.

■ We do not read the controlling authority in this circuit to state that the community market value rule for determining counsel fees under a fee-shifting statute such as the ADA applies only where the plaintiff is represented by a public interest or non-profit firm. In *Student Public Interest Research Group of New Jersey, Inc. v. AT & T Bell Laboratories,* 842 F.2d 1436 (3d Cir.1988) (*SPIRG*), the Court of Appeals for the Third Circuit thoroughly evaluated the various approaches taken by the other circuits on this issue, and rejected the argument set forth by defendant City here, that an attorney's billing rate should provide the hourly rate. Instead, the *SPIRG* court adopted the community market rule as the most workable rule for the district courts to apply as well as the approach most in keeping with the underlying policies of the fee-shifting statutes. *Id.* at 1448–49.

We are satisfied that the affidavits offered by the plaintiff are from attorneys with experience comparable to the plaintiff's attorney who have litigated similar cases, and, at any rate, the defendant does not dispute the validity of the affidavits themselves. Accordingly, we find that the community market rate for this litigation in Erie County is $125.00 per hour, and will use that figure in calculating the lodestar for this case.

To determine a reasonable attorney's fee for Mr. Taggart, we will multiply Mr. Taggart's hours, reduced as previously stated, by an hourly rate of $125.00 to yield the lodestar. We accept the rate of $35.00 per hour as a reasonable rate for paralegal services,

and will multiply Mr. Taggart's paralegal's hours, as modified above, by that amount.

### B. Attorney Joseph's Hours

Attorney George Joseph is currently the plaintiff's worker's compensation attorney. He was also the plaintiff's first attorney in this ADA action, and he litigated the claim at the administrative level with the Equal Employment Opportunity Commission ("EEOC"). Mr. Joseph testified at trial and has submitted an affidavit regarding his representation of plaintiff's various claims. Doc. 87 Ex. A. Mr. Joseph testified that even after Mr. Taggart became the attorney of record on the ADA case, he continued to consult with Mr. Taggart about the case.

Mr. Joseph has submitted an itemized, chronological bill for the time spent on Mr. Marinelli's ADA claim in the amount of $4284.16, which represents hours billed at an hourly rate that increases from $110.00 per hour in 1993 to $130.00 per hour in 1997. Inconveniently for the Court, he has not totaled his hours. Nevertheless, the information is provided with sufficient specificity for us to proceed. We note that the City does not object to Mr. Joseph's stated rate, and that the plaintiff does not suggest that we should calculate a reasonable hourly fee here.

The City contends that Mr. Joseph should not be compensated for any work performed after the conclusion of the EEOC administrative proceeding, since after that point he was only pursuing the worker's compensation claim. We agree in part with the defendant's position.

Mr. Marinelli received a right to sue letter from the EEOC on December 1, 1993. The instant case was filed on February 25, 1994, by attorney William Taggart.

Certainly Mr. Joseph's fee petition shows a long break between December 29, 1993 and August 4, 1994, which we attribute to the fact that his representation of the ADA claim ceased when Mr. Taggart began to pursue the claim in federal court. We find the hours Mr. Joseph lists as expended in litigation through December 29, 1993 to be reasonable at the amount per hour charged in the fee petition.

We do not consider the hours Mr. Joseph claims to have spent on the ADA claim after that date to be reasonable. Mr. Joseph has continued to represent the plaintiff on his workers' compensation claim, and receives a portion the award directly as his fee, and we conclude that these hours may overlap with the ongoing worker's compensation claim for which Mr. Joseph's fee is already regularly paid. Mr. Joseph was not an attorney of record in the ADA case at the district court level, and there is no evidence that he had a fee arrangement with the plaintiff for this portion of the litigation. We will deny Mr. Joseph's petition as to all items billed after August 4, 1994 with the exception of hours claimed for preparing his attorney's fees affidavit. These are the hours billed on January 30, 1996, and on December 22 and 23, 1997. We will grant the petition for these hours, to be paid at the rates stated for these entries on the fee petition.

### C. Contingency Multiplier

Having calculated the lodestar, we turn to the plaintiff's contention that we should upwardly adjust that amount through what is known as a contingency multiplier.

The purpose of a contingency multiplier is to compensate counsel for the riskiness of the litigation. *SPIRG*, 842 F.2d at 1451. In this circuit, a fee enhancement should be granted only in rare cases, and only when necessary to attract competent counsel. *Id.* at 1451–52. We do not find this to be such a case, and will deny the plaintiff's fee petition insofar as it urges us to apply the enhancement for attorneys Taggart and Joseph. We agree with the reasoning of the *SPIRG* court, that "in granting the community market rate we have assured that the fee is sufficient to attract counsel." *Id.* at 1452.

### D. Delay

Delay in payment may also be an appropriate reason to enhance the lodestar. *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 922 (3d Cir. 1985). The plaintiff bears the burden of providing evidence of the need for such damages. *Id.* The plaintiff here addresses the delay between the commencement of this

litigation and the present in ¶ 26 of his fee petition: "In the case at bar George Joseph began services in March 16, 1993, and they continue to date. The defendant continued the trial twice, appealed when the case was not finished and has never offered a penny, even after losing a jury verdict for $85,000." Pl.'s Mot. Doc. 87 at ¶ 26. The plaintiff has provided no evidence of any costs incurred by either attorney as a result of any delay in the payment of attorney's fees, and has failed to meet his burden on this issue. We will deny the plaintiff's fee petition as to delay damages for both attorneys.

## IV. Costs

In addition to attorney's fees, the prevailing party in a civil rights suit may recover costs and litigation expenses from the losing party. 42 U.S.C. § 12205. Mr. Taggart's petition claims costs in the amount of $2,529.05, which will be taxed against the defendant. We will also grant costs as claimed on attorney Joseph's petition, in the amount of $56.66, despite the City's objection that most of this amount went to obtain a medical report from Michael Duncombe, M.D., which was not ultimately used at trial. This seems to us to be a reasonable litigation cost, and although the date falls after Mr. Joseph was no longer actively involved in the ADA litigation, it also seems reasonable that he would have procured the report from this physician.

## V. Conclusion

At the conference held in chambers on February 3, 1998, immediately before the trial on damages commenced, the parties agreed that after the Court issued a decision on the merits of the damages issues the parties themselves would prepare a joint computation of the actual figures. In accordance with this Opinion, we will direct the parties to calculate the damages, fees, and costs and to file the appropriate document with the Clerk of Court within thirty days.