

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-28-1999

# Churchill v. Star Entr

Precedential or Non-Precedential:

Docket 98-1491,98-1632,98-1700

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Churchill v. Star Entr" (1999). *1999 Decisions*. Paper 172.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/172

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 28, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 98-1491, 98-1632, and 98-1700

MARY CHURCHILL,

  Appellant in No. 98-1491

v.

STAR ENTERPRISES, a/k/a STAR STAFF
INCORPORATED; JOSEPH JANTORNO, a/k/a STAR
STAFF INCORPORATED; DAVID SMITH, a/k/a STAR
STAFF INCORPORATED; BERNADINE LANE, a/k/a STAR
STAFF INCORPORATED

MARY CHURCHILL,

  Appellant in No. 98-1632

v.

STAR ENTERPRISES
a/k/a STAR STAFF INCORPORATED;
JOSEPH JANTORNO; DAVID SMITH

MARY CHURCHILL,

v.

STAR ENTERPRISES
a/k/a STAR STAFF INCORPORATED;
JOSEPH JANTORNO; DAVID SMITH,

  Appellants in No. 98-1700

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Judge: Honorable Harvey Bartle, III
(D.C. Civ. Nos. 97-03527 and 98-01751)

Argued May 26, 1999

BEFORE: GREENBERG and SCIRICA, Circuit Judges ,
and DOWD,* District Judge

(Filed: June 28, 1999)

        Thomas M. Holland (argued)
        437 Chestnut Street
        The Lafayette Building
        Philadelphia, Pa. 19106

         Attorney for Mary Churchill

        Irving L. Hurwitz (argued)
        Gary S. Prish
        Carpenter, Bennett & Morrissey
        100 Mulberry Street
        Three Gateway Center
        Newark, New Jersey 07102

         Attorneys for Star Enterprises
         a/k/a Star Staff Incorporated,
         Joseph Jantorno, and David Smith
_____

*Honorable David D. Dowd, Jr., Senior Judge of the United States
District Court for the Northern District of Ohio, sitting by designation.

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I. INTRODUCTION

This case involves a question of claim preclusion: what steps must a plaintiff take to bring about the consolidation of her consecutively filed cases in the district court so that claims in the later case are not precluded by the earlier action? In particular, the district court barred appellant Mary Churchill by a judgment on the pleadings from proceeding with a law suit, Churchill v. Star Enterprises, 3 F. Supp.2d 625 (E.D. Pa. 1998) ("Churchill II"), alleging claims under the Americans with Disabilities Act and the Pennsylvania Human Relations Act because she already had brought a suit, Churchill I, based on the same facts and related issues against the defendants in Churchill II, asserting claims in Churchill I under the Family and Medical Leave Act. See Churchill v. Star Enters., 3 F. Supp.2d 622 (E.D. Pa. 1998) ("Churchill I").

We will affirm the district court's judgment on the pleadings in Churchill II because the two cases involved the same parties and germane facts, as well as related issues, and for claim preclusion purposes constituted a single cause of action that should have been joined in a single case. We also will affirm the district court's order on the Appellees' cross-appeal from the denial of an order under Fed. R. Civ. P. 11 seeking sanctions against Churchill for filing Churchill II. Finally, we will affirm on Churchill's separate appeal from an order denying in part her application for attorney's fees in Churchill I.

II. FACTS AND PROCEDURAL HISTORY

A. Background

The facts that we find material to our disposition of these appeals are not contested. Churchill began work at Star Enterprises, a.k.a. Star Staff Inc. ("Star Staff"), in July

3

1991 managing a food mart at a Texaco station in Pennsylvania. In June 1996, Churchill was diagnosed with oral cancer. She then notified her temporary supervisor, Walter Schreiber, of her condition and of her need to undergo treatment. During the next two months she underwent three surgical procedures and between August and October 1996, she received radiation treatments. Churchill was limited substantially in performing major life activities, and thus was disabled, but nevertheless continued to work. Churchill made numerous requests to Star Staff for reasonable accommodations during this time, communicating these requests to David Smith, her manager, and Joseph Jantorno, her regional manager, but they were unresponsive. On January 29, 1997, Churchill made a final request for accommodation, and put Star Staff on notice that due to her medical needs she qualified for leave under the Family and Medical Leave Act of 1993, 29 U.S.C. SS 2601-2654 ("FMLA"). Jantorno then instructed Smith to evaluate Churchill and then Jantorno and Smith consulted with Deborah Cox of Star Staff's Human Resources Department regarding the case. Star Staff terminated Churchill on February 5, 1997, because of her disability. Churchill I and II and these appeals followed.

B. Procedural History

1. Churchill I

Churchill initiated Churchill I on May 20, 1997, against Star Staff and three of its employees: Jantorno, Smith, and Bernadine Lane, who replaced her as the station manager. Churchill alleged that Star Staff, Jantorno, and Smith violated the FMLA when they discharged her and also were liable to her on common law claims for bad faith and wrongful discharge.1 She charged Lane with defamation,

_____

1. FMLA grants an "eligible employee" the right to 12 work weeks of leave, over any 12-month period: (1) because of the birth of the employee's child, in order to take care of the child; (2) because of the placement of a child with the employee for adoption or foster care; (3) in order to care for the employee's child, spouse, or parent, if the child, spouse or parent has a serious health condition; or (4) because of a serious health condition that makes the employee unable to perform the

4

but dropped that count on December 19, 1997, and dismissed Lane as a defendant.

The district court entered judgment on January 27, 1998, for the three remaining defendants on the state law claims because FMLA preempted them. Trial began on the other counts on February 11, 1998, and on February 13, 1998, the jury rendered its verdict for Churchill, holding the defendants jointly and severally liable for damages of $8,609.02, plus interest at 6.5%, or $559.59. The court doubled the award as liquidated damages, finding that the defendants' violation of FMLA was not in good faith. On February 17, 1998, the court entered judgment for $18,337.22, and ordered that Churchill be reinstated to a position equivalent to her prior position with equivalent wages and benefits.

Churchill then sought attorney's fees of $52,018.20, as well as costs pursuant to 29 U.S.C. S 2617(a)(3). On April 17, 1998, the district court issued a Memorandum and Order partially granting and partially denying Churchill's fee application and ordering the defendants to pay $37,062.50 for attorney's fees and $9,410.19 costs. Churchill filed a motion for reconsideration of that order, which the court denied by an order entered on May 28, 1998. On this appeal, Churchill seeks reversal of the portion of the order denying attorney's fees for (1) time spent in connection with an unemployment compensation hearing on March 26, 1997, on a claim Churchill brought after her discharge and (2) for time to prepare for and conduct a deposition of Lane.

_____

functions of the employee's position. 29 U.S.C.S 2612(a)(1). After a period of qualified leave, an employee is entitled to reinstatement to her former position or an equivalent one with the same benefits and terms. 29 U.S.C. S 2614(a). FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise,
any right provided" in the FMLA. 29 U.S.C. S 2615(a)(1). FMLA similarly declares it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" under the FMLA. 29 U.S.C. S 2615(a)(2). Section 2917(a) of FMLA authorizes civil damage actions by employees. 29 U.S.C. S 2617(a).

5

### 2. Administrative Claims

Churchill pursued her claims against Star Staff along parallel courses. Thus, on February 26, 1997, Churchill filed an administrative complaint alleging disability discrimination with the Pennsylvania Human Relations Commission ("PHRC"), and at that time her administrative complaint was dual filed with the Equal Employment Opportunity Commission ("EEOC") asserting an American with Disabilities Act claim. The PHRC dismissed the disability discrimination claim on or about November 14, 1997, and on April 26, 1998, Churchill received a right to sue letter dated April 24, 1998, from the EEOC. As we will discuss, she had not requested a right to sue letter.

### 3. Churchill II

On April 2, 1998, about two months after the jury reached its verdict in Churchill I, Churchill filed a complaint against the Appellees, Star Enterprises, Jantorno, and Smith, under the Americans with Disabilities Act ("ADA"), 42 U.S.C. SS 12101 et seq. (Counts I and II); the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. SS 951 et seq. (1991 & Supp. 1998) (Counts III and IV); and the New Jersey Family Leave Act, N.J. Stat. Ann. SS 34:11-B1 et seq. (West Supp. 1999) (Counts V and VI).[2] The Appellees answered the complaint on April 23, 1998, including as an affirmative defense the contention that Churchill's claims were "barred by the doctrine of res judicata," and that Appellees had "fully satisfied the court's judgment entered February 17, 1998 . . . ." There is no doubt that the Appellees' answer raised the res judicata defense in reliance on the proceedings in Churchill I and Churchill does not contend otherwise.

The district court on Appellees' motion to dismiss entered a judgment for the Appellees on the pleadings on June 23, 1998, on claim preclusion principles because Churchill II and Churchill I "involved the same cause of action." Churchill II, 3 F. Supp.2d at 628. On July 21, 1998,

_____

2. Churchill's complaint was apparently premature with respect to her ADA claim as she brought it before she received the right to sue letter.

6

Churchill appealed in Churchill II, seeking reinstatement of her ADA and PHRA Counts.3

    4. Star Staff's Rule 11 Motion

On May 1, 1998, the Appellees served Churchill with notice that they intended to seek sanctions against her for filing Churchill II and unless she withdrew that case within 21 days they would file the motion for sanctions. Obviously, Churchill did not comply with their request and on May 29, 1998, when the Appellees filed their motion to dismiss Churchill II on res judicata grounds, they also moved for sanctions in the form of reimbursement of attorneys' fees and costs incurred in bringing the motion. Although, as we have indicated, the district court granted the Appellees judgment on the pleadings, it denied their motion for sanctions "under the totality of the circumstances." Churchill II, 3 F. Supp.2d at 631.

III. STANDARD OF REVIEW

We exercise plenary review of the order for judgment on the pleadings, see Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290 (3d Cir. 1988), and thus of the application of claim preclusion in Churchill II, see Rider v. Pennsylvania, 850 F.2d 982, 988-95 (3d Cir. 1988), and we review the denial of Rule 11 sanctions for abuse of discretion, see Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers, 855 F.2d 1080, 1091 (3d Cir. 1988). On Churchill's appeal from the partial denial of her attorney's fee application in Churchill I we exercise an abuse of discretion standard. See EEOC v. L.B. Foster Co., 123 F.3d 746, 750 (3d Cir. 1997).

IV. DISCUSSION

A. Claim Preclusion

This case seems to present the first application in any

_____

3. Churchill does not appeal from the dismissal of the New Jersey Family Leave Act counts. She apparently brought that claim because Star Staff's office is in New Jersey.

court of appeals of claim preclusion barring the assertion of claims following a case already litigated under FMLA.4 Yet while the constellation of facts in this case is new, the principles of the doctrine of claim preclusion are familiar. Moreover, the circumstance that FMLA and the interests it protects are involved in this case does not mean that we should honor Churchill's request that we depart from those principles. In particular, this case implicates issues involving Churchill's failure to seek a stay of Churchill I so that her claims in Churchill II could have been joined in that action. It also involves consideration of Churchill's failure to seek a right to sue letter from the EEOC so that she could have expedited bringing Churchill II.

The district court decided that the fact that there are administrative procedures that a plaintiff must follow before she pursues a PHRA or ADA claim in court did not justify the court in refusing to apply claim preclusion principles. The court in reaching its decision indicated that Churchill could have expedited the administrative procedures and sought a stay of Churchill I so that the PHRA and ADA claims could have been included in that case.

Churchill argues that she should not have been required to seek a stay of Churchill I because a stay, by delaying her opportunity to obtain relief under FMLA, would have prejudiced her and frustrated public policy. She alternately argues that she did move for a stay in Churchill I. She further argues that she should not have been required to request that the EEOC expedite issuance of the right to sue letter in order to exhaust the administrative claims. For the reasons that follow we reject those arguments, and uphold the district court's application of claim preclusion principles.

_____

4. We have found only one other opinion which applied claim preclusion to a suit involving an FMLA allegation; however, that case involved preclusion of the reasserted FMLA claim itself, not allegations under other statutes. Solien v. Physicians Business Network, Inc. 22 F. Supp.2d 1237 (D. Kan. 1998) (res judicata precluded plaintiff 's FMLA suit where defendant prevailed on motion for summary judgment).

8

1. The claims in Churchill II required administrative exhaustion.

As we have indicated the court granted Appellees' motion for judgment on the pleadings on Churchill's ADA and PHRA claims in Churchill II.5 Unlike the FMLA, both the ADA and the PHRA require pursuit of administrative remedies before a plaintiff may file a complaint in court. Thus, a party who brings an employment discrimination claim under Title I of the ADA must follow the administrative procedures set forth in Title VII of the Civil Rights Act of 1964, 42 U.S.C. S 2000e-5. See Bishop v. Okidata, Inc., 864 F. Supp. 416, 424 (D.N.J. 1994). Accordingly, a party must wait 180 days after filing a charge with the EEOC for ADA violations before being able to forego the administrative process and file suit in court. See 42 U.S.C. S 2000e-5(e)(1). After 180 days, "[i]f a complainant is dissatisfied with the progress the EEOC is making on his or her charge of employment discrimination, he or she may elect to circumvent the EEOC procedures and seek relief through a private enforcement action in a district court." Occidental Life Ins. Co. of California v. EEOC, 432 U.S. 355, 361, 97 S.Ct. 2447, 2451 (1977).

_____

5. At the oral argument before us a question was raised as to whether the district judge who heard Churchill I could dismiss Churchill II on the pleadings on the basis of the record. We are satisfied that the judge's review of the complaints in Churchill I and II and the answer in Churchill II adequately supported dismissal based on the face of the pleadings and that the outcome of this case did not hinge in the district court on the circumstance that the same judge heard Churchill I and Churchill II and thus had a special insight into the case. While we recognize that the Appellees did not attach copies of the pleadings from Churchill I to their answer in Churchill II as they might have pursuant to Fed. R. Civ. P. 10(c), still in view of the circumstance that the operative facts are those in the pleadings in the two cases which are matters of public record, we decline to remand the matter to the district court so that the Appellees can amend their answer in Churchill II to include the pleadings from Churchill I which then would be "part [of the answer] for all purposes." Id. See Pension Benefit Guaranty Corp. v. White Consolidated Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.) (emphasis added); Rose v. Bartle, 871 F.2d 331, 339 n.3 (3d Cir. 1989).

9

Similarly, a party must wait one year after filing charges with the PHRC for alleged PHRA violations before having the option to forego the state administrative process and file suit in court. PHRA provides that the PHRC shall have exclusive jurisdiction of an administrative claim for one year after its filing, unless the PHRC resolves the claim before the one year has elapsed. See 43 Pa. Cons. Stat. Ann. S 962(c)(1).6

As we discuss below, Churchill should have moved to consolidate Churchill I and Churchill II for they advanced the same cause of action. Churchill could have filed both the PHRA and ADA claims presented in Churchill II in time to join them with her FMLA claim in Churchill I. In the case of the PHRA claim, no special steps were needed to preserve that claim and join it to the FMLA action. On May 20, 1997, the date Churchill filed Churchill I, the PHRC still was investigating her PHRA claim. The EEOC charge was held in abeyance pending the PHRC's investigation. The PHRC made a finding of no probable cause on the PHRA charge on November 14, 1997. Thus, prior to the start of the trial in Churchill I, Churchill knew that the PHRC had dismissed her PHRA complaint, and accordingly she could have brought an action on that claim about three months before Churchill I went to trial.

_____

6. The PHRA provides in relevant part:

> If within one (1) year after the filing of a complaint with the Commission, the Commission dismisses the complaint or has not entered into a conciliation agreement to which the complainant is a party, the Commission must so notify the complainant. On receipt of such a notice the complainant shall be able to bring an action in the courts of common pleas of the Commonwealth based on the right to freedom from discrimination granted by this act. If the court finds that the respondent has engaged in or is engaging in an unlawful discriminatory practice charged in the complaint, the court shall enjoin the respondent from engaging in such unlawful discriminatory practice and order affirmative action which may include, but is not limited to, reinstatement or hiring of employees, granting of back pay, or any other legal or equitable relief as the court deems appropriate.

43 Pa. Cons. Stat. Ann. S 962(c)(1).

10

As for the ADA claim, Churchill could have requested a right to sue letter after 180 days had passed from the filing date of her EEOC charge. "At the end of the 180-day period the employee is entitled to sue, regardless of EEOC proceedings." Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984). Thus, on August 25, 1997, well before the Churchill I trial, she could have requested a right to sue letter.7 The EEOC must issue the letter upon request. See McNasby v. Crown Cork and Seal Co., 888 F.2d 270, 274 n.3 (3d Cir. 1989). Churchill did not request a right to sue letter, instead waiting for the EEOC to issue it. Thus, she "sat on her rights" when she could have attempted to join the ADA claim to the FMLA claim in consolidated litigation. While Churchill argues that in some cases the EEOC may not respond promptly and correctly to such requests, we will not address the argument because she did not attempt to obtain the letter.

Moreover, the district court correctly alternatively held that Churchill could have requested the court to stay Churchill I, while she waited for the right to sue letter, and by that procedural step preserved the PHRA and ADA claims now precluded. See Churchill II, 3 F. Supp.2d at 630. Churchill points out that the court in Churchill I was aware of her pending administrative claims, and asserts that the court improperly and unfairly put "the responsibility of promoting the ideas of claim preclusion and judicial economy solely on [her] back." We reject that argument summarily. Attorneys should organize litigation that they are pursuing to avoid claim preclusion. Accordingly, the mere fact that the district court was aware of Churchill's administrative claims and sua sponte might

_____

7. The district court believed that because of the application of 42 U.S.C.
S 2000e-5(c) the 180-day period did not begin to run until after 60 days following Churchill's PHRA filing. See Churchill II, 3 F. Supp.2d at 630. We need not explore this point further because Churchill did not request a right to sue letter at any time and the addition of the 60 days to the 180-day period would not affect our result as the extended period would have expired several months before the trial in Churchill I. We described the relationship between PHRA and EEOC proceedings in Trevino-Barton v. Pittsburgh Nat'l Bank, 919 F.2d 874 (3d Cir. 1990). See also Berkoski v. Ashland Reg'l Med. Ctr., 951 F. Supp. 544 (M.D. Pa 1997).

have stayed Churchill I did not relieve Churchill of the necessity to take steps to preserve her claims. See, e.g., Nernberg v. United States, 463 F. Supp. 752 (W.D. Pa. 1979).

Churchill argues that she made a motion for a stay at trial. In support of this assertion she refers to a side bar conference during Churchill I, in which the court excluded references to the administrative claims. The court did not permit reference to the PHRA and ADA claims because they were not being litigated along with the FMLA claim. While these evidentiary proceedings demonstrate that the court was aware of the administrative claims, they surely do not include a motion for a stay. In any event, if Churchill desired that the court stay Churchill I so that she could include her PHRA and ADA claims in that action, she should have asked for the stay before the trial.

Churchill also argues that if the court stayed Churchill I she would have been prejudiced because FMLA offers equitable relief, such as reinstatement and resumption of benefits, which should not be delayed for reasons of judicial economy. Arguing that she sought a "prompt determination" of her FMLA claims, she contends that she now has been prevented unjustly from pursuing her rights under the ADA and PHRA.

In considering this argument, we address the policy concerns behind FMLA which Congress enacted to promote job stability when workers confront illness or family emergencies. The FMLA history evinces Congress's intent to pass FMLA as an addition to federal labor laws establishing minimum standards for employment:

> The [FMLA] accommodates the important societal interest in assisting families, by establishing a minimum labor standard for leave. The bill is based on the same principle as the child labor laws, the minimum wage, Social Security, the safety and health laws, the pension and welfare benefit laws, and other labor laws that establish minimum standards for employment.

S. Rep. No. 103-3 at 4, 1993 U.S.C.C.A.N. at 6-7.

12

Congress stated that the purposes of FMLA include the following: "(1) to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity; [and] (2) to entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse or parent who has a serious health condition; . . ." FMLA S 2(b)(1), (2), 29 U.S.C. S 2601(b)(1), (2).

In support of its decision to enact FMLA, Congress made several findings, including the recognition that "the primary responsibility for family caretaking often falls on women, and such responsibility affects the working lives of women more than it affects the working lives of men; . . ." FMLA S 2(a)(2), (3), (5), 29 U.S.C. S 2601(a)(2), (3), (5). Given this background, it is clear that FMLA is intended to aid workers --especially but not exclusively working mothers like Churchill--maintain job stability when they must care for themselves or their family. Nevertheless, despite the substantive protection FMLA provides, we see no reason to hold that Congress intended in enacting FMLA that proceedings under the statute are not to be given preclusive effect in later litigation. Thus, while FMLA provides for equitable relief, including reinstatement, we cannot find that this important legislative goal "trumps" long standing preclusive effect doctrines.

Case law dealing with FMLA is limited. Churchill does not cite any case law to buttress her contention that an FMLA plaintiff is somehow due greater latitude than other plaintiffs with respect to the need to delay litigation in order to consolidate separate cases. To the contrary, federal courts thus far have viewed FMLA as similar to Title VII, the ADA, and other laws which protect employees. See, e.g., Holmes v. Pizza Hut of Am., Inc., 1998 WL 564443, at *8 (E.D. Pa. 1998) (FMLA, PHRA and ADA "protect the same interests and provide relief for the same violations").

We may look to case law under Title VII in assessing the situation of plaintiffs who do not seek a stay of an FMLA suit as they wait for an EEOC right to sue letter before asserting an ADA claim, or who for some other reason delay bringing an ADA claim. Three courts of appeals have held

13

that a plaintiff in an employment discrimination case may have to forego administrative remedies and obtain an early right to sue letter. See Heyliger v. State Univ. and Community College Sys. of Tenn., 126 F.3d 849, 855 n.2 (6th Cir. 1997), cert. denied, 118 S.Ct. 1054 (1998); Herrmann v. Cencom Cable Assocs., Inc., 999 F.2d 223, 225 (7th Cir. 1993); and Woods v. Dunlop Tire Corp., 972 F.2d 36, 40 (2d Cir. 1992). We agree with these persuasive decisions.

In Heyliger, the Court of Appeals for the Sixth Circuit held that an employee's prior state court lawsuit against his employer under a state civil rights law prevented the employee from suing the employer in federal court for allegedly violating Title VII. The court determined that the state and federal claims arose out of the employer's decision not to renew the employee's contract, the state court had entered a valid and final judgment on merits of state claims, and the Title VII claim could have been added to the state claims. The court of appeals concluded that requiring a plaintiff in the circumstances in Heyliger to seek a right to sue letter and to amend his complaint to add the federal claim would not impose a burden on him beyond that of a due diligence standard. Id. at 856. Similarly, in Herrmann v. Cencom Cable Assoc., Inc., 999 F.2d at 225-26, the court held that the plaintiff, in order to avoid claim preclusion, had been obliged to seek a right to sue letter and join his Title VII claim with another, sufficiently related, pending federal action. Finally, in Woods v. Dunlop Tire Corp., 972 F.2d at 40-41, the court precluded a Title VII action where the plaintiff could have sought a right to sue letter and an order to file an amended complaint in a pending federal case to include the Title VII claim.

Thus, courts have rejected favoring "the language and policy of Title VII" as "against application of well-settled claim preclusion principles." Woods, 972 F.2d at 39. We do not find that the language and policy of FMLA is so different from that of Title VII as to "trump" the claim preclusion principles. Title VII, like FMLA, provides for back pay and front pay or reinstatement. 42 U.S.C. SS 2000e et seq. See Marinelli v. City of Erie, 25 F. Supp.2d 674, 678

14

(W.D. Pa.), appeal dismissed, 135 F.3d 765 (3d Cir. 1998). Accordingly, the harm to a successful plaintiff under both FMLA and Title VII will be mitigated in many cases by the accrual of back pay and prejudgment interest if she prevails.

We recognize the burden placed upon working, single parents like Churchill in confronting their own serious illness or that of a family member, and acknowledge the protection offered by FMLA and the important interests it addresses. Yet Title VII similarly addresses injuries sustained by employees suffering discrimination, who wrongly may be forced from work and required to wait for redress in the form of reinstatement or back pay as they pursue their claims. Persons pursuing rights under these statutes must preserve their ability to seek redress in a manner compatible with longstanding principles of judicial economy: requesting a right to sue letter is not an onerous burden, and we believe that in many cases a motion to stay an FLMA action will preserve all legal claims without undue prejudice to the plaintiff. We believe that district courts are likely to look favorably on applications for stays of FMLA proceedings while plaintiffs promptly pursue administrative remedies under Title VII and similar state laws and we urge them to do so.[8]

It is also important to bear in mind another point. Churchill I and II involved statutes with fee-shifting provisions. See 29 U.S.C. S 2617(a)(3) (FMLA); 43 Pa. Cons. Stat. Ann. S 962(c.2) (PHRA); 42 U.S.C. S 12205 (ADA). Thus, an employer held liable in consecutive actions without doubt will be confronted with multiple motions for attorney's fees and costs. Moreover, employers defending consecutive actions, whether or not the actions are successful, will incur greater attorney's fees and other expenses for their defenses than they would incur if defending only a single case. Surely it is only fair that such applications and expenses be avoided as the purpose of

_____

8. Obviously we are not concerned here with a situation in which a court denied a diligent plaintiff's application for a stay in an FMLA action and thus precluded her from asserting her various claims in a single case. In those circumstances we might reach a different result.

15

statutes such as the FMLA, the PHRA, and the ADA is to provide protection for employees and to allow them to recover damages or other relief for employers' conduct if the employees can establish liability under the applicable statute. Congress did not pass the statutes for the purpose of generating legal fees for plaintiffs' and defendants' attorneys. We are not so naive that we do not recognize that if we reached a different result on the claim preclusion issue we would be encouraging knowledgeable plaintiffs' attorneys to bring separate cases to generate additional attorney's fees in situations in which a single case would suffice. Applying claim preclusion principles as we do will further the legitimate policy of avoiding unnecessary legal expenses.

Overall, then, we are satisfied that in this case we should apply ordinary claim preclusion principles. Thus, we address the question of whether Churchill I and Churchill II involved the same cause of action so that Churchill II is precluded.

### 2. The cause of action.

The purpose of claim preclusion is to avoid piecemeal litigation of claims arising from the same events. See Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc. v. Centra, 983 F.2d 495, 504 (3d Cir. 1992). "[A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Rivet v. Regions Bank of Louisiana, 522 U.S. 470, 473, 118 S.Ct. 921, 925 (1998) (internal citation omitted). A determination of whether two lawsuits are based on the same cause of action "turn[s] on the essential similarity of the underlying events giving rise to the various legal claims." Board of Trustees, 983 F.2d at 504, quoting U.S. v. Athlone Indus., Inc., 746 F.2d 977, 983 (3d Cir. 1984). Because the courts have not defined precisely "causes of action," for claim preclusion purposes, we take a broad view, focussing on the underlying events of the two actions. Athlone, 746 F.2d at 984.

Claim preclusion gives dispositive effect to a prior judgment if "a particular issue, although not litigated, could

16

have been raised in the earlier proceeding. Claim preclusion requires: (1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action." Id. "Courts should not apply this conceptual test mechanically, but should focus on the central purpose of the doctrine, to require a plaintiff to present all claims arising out the same occurrence in a single suit." Id.

The Appellees clearly demonstrated the presence of the first two requirements set forth in Athlone when they sought judgment in their favor in Churchill II and Churchill acknowledges this point. There had been a final judgment on the merits in Churchill I, and Churchill I and II involved the same parties. As for the third requirement, i.e., whether the cause of action was the same, the district court properly concluded that the case "involve[d] the same cause of action because the underlying events in both cases are the same," as the acts complained of were the same, and the evidence at the trial would have been the same. While Churchill cited different statutes to support her two cases, the FMLA in Churchill I and the ADA and PHRA in Churchill II, the court correctly observed that the fact that Churchill advanced different legal theories does not mean that her second action will not be precluded.

Churchill contends that Churchill II differs from Churchill I because the Churchill II complaint introduced "new material facts" and "new elements of . . . damages." She argues in particular that the following "new material facts" were presented as "additional allegations" in the Churchill II complaint: (1) David Smith replaced temporary supervisor Walter Schreiber in October 1996; (2) in Churchill II she listed side effects including fatigue, depression, weight loss, loss of appetite, difficultly swallowing, dry mouth, sores in the mouth, and limited range of movement in the neck; (3) Smith informed Jantorno of her requests for accommodation; (4) Jantorno then scheduled an "untimely" evaluation of Churchill and asked Smith to conduct an evaluation; and (5) Smith and Jantorno consulted with

17

Deborah Cox of the Human Resources Department of Star Staff, as to how to deal with the situation.9

Indeed, these were new allegations but the thrust of the two complaints remained practically identical. See Harding v. Duquesne Light Co., 1995 WL 916926 at *3 (W.D. Pa. 1995) (no showing of different "causes of actions" where complaints "practically identical"). In each complaint, Churchill stated where, when and for whom she worked, that she was diagnosed for cancer in the summer of 1996, had three surgeries and radiation treatment, that she sought staff assistance as an accommodation to her medical condition, that several requests for accommodation were ignored and that she was fired as a result of her disability and medical needs and efforts to receive the accommodation she claimed was due. Moreover, in Churchill II she was seeking a recovery for essentially the same wrongful conduct for which she obtained a recovery in Churchill I.

Thus, we conclude that the district court properly found that the claims were the same under Athlone, and that claim preclusion should apply. There is simply no escaping from the fact that Churchill has relied on different legal theories to seek redress from the Appellees for a single course of wrongful conduct. Because the claims were the same, Churchill asserted a single cause of action in both cases that the doctrine of claim preclusion required her to have joined in one suit. Thus, this case at bottom is simply a classic example of splitting a cause of action. 10

_____

9. Specifically, Churchill I's complaint does not specify that Smith replaced Schreiber, but merely identifies Schreiber as her temporary supervisor, and identifies Smith as "at all times [Churchill's] Manager"; states that Churchill had and was treated for cancer, but does not specify the side effects suffered; states that on January 29, 1997, "[Churchill] provided sufficient notice to Defendant Smith that she had a serious medical need which qualified [Churchill] for Family Medical Leave," but otherwise does not describe how the Appellees became aware of her condition, and does not include information about the evaluation and how Cox was involved.

10. It should not be thought that by artful pleading of unnecessary allegations in a second complaint a plaintiff can avoid the result we reach.

18

B. The Remaining issues

As we indicated, the Appellees have filed a cross-appeal from the denial of sanctions under Rule 11 and Churchill has filed an appeal from the denial of certain attorney's fees and costs in Churchill I. We have reviewed these appeals carefully and have concluded that they are without merit. Thus, we will affirm on these appeals without further discussion.

V. CONCLUSION

For the foregoing reasons we will affirm the order entered May 28, 1998, on appeal in No. 98-1491, denying reconsideration of the order with respect to counsel fees and costs, and will affirm the order entered June 23, 1998, on appeal on Nos. 98-1632 and 98-1700, granting the Appellees judgment on the pleadings but denying their motion for sanctions.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

19