

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-3-2004

# Dawley v. Erie Indemnity Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3860

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Dawley v. Erie Indemnity Co" (2004). *2004 Decisions.* Paper 619.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/619

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 03-3860

———

SHAWN M. DAWLEY,

Appellant

v.

ERIE INDEMNITY COMPANY,
d/b/a
ERIE INSURANCE GROUP

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(Dist. Ct. No. 00-CV-00106)
District Judge: Honorable Sean J. McLaughlin

———

Submitted Under Third Circuit LAR 34.1(a)
May 14, 2004

Before: NYGAARD, MCKEE and CHERTOFF, Circuit Judges

(Filed: June 3, 2004)

———

OPINION

———

CHERTOFF, Circuit Judge.

Appellant Shawn M. Dawley brought suit against appellee Erie Indemnity Co.

("Erie Indemnity") alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* The District Court granted Erie Indemnity's motion for summary judgment on all claims against it. For the following reasons, we will affirm.

I.

We exercise plenary review over a district court's grant of summary judgment, and we apply the same standard the district court should have applied. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278 (3d Cir. 2000). A court should grant summary judgment if, viewing the facts and drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Id. (quoting Fed. R. Civ. P. 56(c)).

We therefore set forth the facts in abbreviated fashion (since we write solely for the parties) and interpreted most favorably to appellant, the nonmoving party.

II.

Erie Indemnity hired Dawley to work for it as a security officer on March 25, 1991. About four months later, on July 23, 1991, Dawley went on a leave of absence to undergo surgery to remove a brain tumor.

Dawley returned to work on a part-time basis approximately a year later, in July of 1992, and his doctor cleared him to resume all of his job responsibilities, with no restrictions, on September 3, 1992. Dawley had been in training when he went on leave, and when he returned to work his supervisor (James F. Bomba) decided that he should start his training from the beginning.

On June 2, 1994, Erie Indemnity announced that it was eliminating three security officer positions. Dawley had received positive performance evaluations over the course of the previous two years, but his position was one of the three that Bomba decided to eliminate. One of the security officers who maintained his position, Michael B. Whren, was African American. Erie Indemnity had hired Dawley approximately a year after it hired Whren.

Dawley thereafter received a transfer to the Distribution Services Department, where he worked as a mail courier beginning July 7, 1994. Approximately two months later, on September 15, 1994, Dawley filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). He alleged that his security officer position had been eliminated due to his race and because he was disabled.[1]

In the meantime, Dawley continued to receive positive evaluations for his work as a mail courier, and he eventually bid for a job as a grounds attendant. Dawley obtained the position and began the job on November 13, 1995. On October 9, 1996, he received another positive performance evaluation from his new supervisor, Chuck Snyder.

On May 16, 1997, however, Snyder instituted a formal disciplinary action against Dawley for alleged insubordinate conduct during a groundskeeper unit meeting. Dawley was warned that any further argumentativeness, insubordination, violation of company policy, or failure to perform his job duties at an acceptable level would not be tolerated and would result in further disciplinary action, up to and including termination. Richards held review meetings with Dawley on June 20, 1997 and August 20, 1997 to address similar job performance issues, including alleged tardiness and continuing argumentative

---

[1] Dawley eventually received a right to sue letter after the EEOC determined that there was evidence that defendant had violated the ADA but not Title VII.

behavior.

Two days later, on August 22, 1997, Richards placed Dawley on a sixty day probationary period for alleged continuing unsatisfactory job performance and argumentativeness. The accompanying performance evaluation gave Dawley negative ratings in several categories, such as "interpersonal relations" and "quality of job performance." On September 19, 1997, Richards met with Dawley and told him he was fired because he continued to exhibit unacceptable job performance by, *inter alia*, smoking in the groundskeeping garage, failing to start work on time, and questioning Richards's directions.[2]

Dawley alleges that Erie Indemnity (1) violated Title VII by eliminating his position as security officer due to his race; (2) violated the ADA by eliminating his position as security officer due to his disability; (3) violated Title VII and the ADA by terminating him in retaliation for filing a complaint with the EEOC alleging race and disability discrimination; and (4) violated the ADA by terminating him in order to cut the costs associated with his alleged disability. We address Dawley's claims seriatim.

III.

We apply the three-step McDonnell Douglas burden shifting scheme to claims of disparate treatment and retaliation under Title VII and the ADA where, as here, a plaintiff does not offer direct evidence of discrimination. See Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999) (Title VII disparate treatment); Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997) (Title VII retaliation); Shaner v. Synthes, 204 F.3d

---

[2] Dawley eventually received a right to sue letter after the EEOC determined that there was evidence that defendant had retaliated against him in violation of the ADA and Title VII.

494, 500 (3d Cir. 2000) (ADA disparate treatment and retaliation).[3]  In the first step, the plaintiff must make out a prima facie case.  If he does, a presumption of discrimination or retaliation arises and the burden shifts to the defendant to produce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory [or nonretaliatory] reason for the unfavorable employment decision." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).  If the defendant carries this burden, the presumption drops out and the plaintiff must submit evidence "'from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory [or retaliatory] reason was more likely than not a motivating or determinative cause of the employer's action.'" Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc) (quoting Fuentes, 32 F.3d at 764).

As a preliminary matter, we address whether in reviewing the District Court's judgment we can properly consider certain documents (the determinations by the EEOC, see supra notes 1-2) that Dawley urges create disputed issues of fact. Dawley attached the documents to his second amended complaint, but he did not offer them to the District Court when he opposed defendant's motion for summary judgment.  Nor did he make any mention of them to the District Court, either in his papers or at oral argument on defendant's motion.

To be sure, a Court can consider "pleadings" on a motion for summary judgment. But it is not clear that a complaint and accompanying documents are part of the record on

---

[3] To succeed on a direct evidence theory, "the evidence must be such that it demonstrates that the decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision." Connors v. Chrysler Fin. Corp., 160 F.3d 971, 976 (3d Cir. 1998) (internal citations and quotations omitted); see also Fakete v. Aetna, Inc., 308 F.3d 335, 338-39 (3d Cir. 2002).  Despite his assertions to the contrary, Dawley has not offered evidence that would warrant proceeding along that track.

summary judgment absent a party offering it to the District Court pursuant to Rule 56. Insofar as they are not, we cannot consider them on appeal. See Union Pac. R.R. Co. v. Greentree Transp. Trucking Co., 293 F.3d 120, 125-26 (3d Cir. 2002) ("[A]n appellate court may only review the record as it existed at the time summary judgment was entered."). Even if they are properly considered part of the summary judgment record, however, Dawley's failure to refer the District Court to them as a basis for denying defendant's motion from summary judgment precludes him from doing so now on appeal. Rule 56 does not oblige a district court to scour the entire record to find a factual dispute. See, e.g., Amnesty American v. Town of West Hartford, 288 F.3d 467, 470-71 (2d Cir. 2002) (collecting cases); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1029-31 (9th Cir. 2001).[4]  Just as a party on appeal "'cannot add exhibits, depositions, or affidavits to support their position,'" it cannot "'advance new theories or raise new issues in order to secure a reversal of the lower court's determination.'" Greentree Transp. Trucking Co., 293 F.3d at 126 (quoting 10A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2716 (1998)).  We therefore do not consider the EEOC determinations in reviewing the District Court's decision.

A.

The District Court assumed *arguendo* that Dawley established a prima facie case of disparate treatment under Title VII and proceeded to determine whether defendant satisfied its burden of production.  To do so, Erie Indemnity offered an affidavit from James Bomba describing how he chose which employees' positions to eliminate.  The

---

[4] Indeed the Western District of Pennsylvania's Local Rule 56.1 requires a party opposing a motion for summary judgment to cite to the particular part of the record that evidences the existence of an issue of disputed fact.

affidavit states that he made the decision based on the respective employees' (1) amount of work experience at Erie Indemnity as a security officer; (2) job performance as reflected in performance evaluations; and (3) prior security experience with employers other than Erie Indemnity. The District Court concluded that Erie Indemnity had satisfied its burden, and we agree.

Dawley argues that a factfinder could disbelieve the reasons offered in Bomba's affidavit because he in fact had commenced work at Erie Indemnity earlier than Whren, the African American security officer who maintained his position. But Bomba states in his affidavit that he did not base his decision on the length of time each security officer was employed by Erie Indemnity. Rather, he looked at how much time each officer had actually worked as a security officer at Erie Indemnity. In other words, the criterion was experience rather than seniority.

Dawley began his training anew when he returned to work in July of 1992. Whren, who began work at Erie Indemnity in April of 2002, was therefore further ahead in his training and job experience. Moreover, the record indicates that Whren had received on overall performance assessment of 104 points, while Dawley had received an assessment of 100. Thus Dawley has failed to demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." Fuentes, 32 F.3d at 765 (emphasis and internal quotations omitted).

Next, Dawley argues that an affidavit from Laurel Hirt (a former employee at Erie Indemnity and the grand-daughter of the company's co-founder) tends to show that an invidious reason was more likely than not a motivating or determinative cause of the

decision to eliminate his position. We agree with the District Court's conclusion, however, that "given the three-fold problems with Hirt's affidavit, i.e., the lack of personal knowledge, its reliance on hearsay, and its completely speculative nature, it runs afoul of Rule 56(e) of the Federal Rules of Civil Procedure and does not create a triable issue of fact." In the affidavit Hirt avers, for example, that eliminating the "only black Security Officer at Erie Indemnity Company, would likely have damaged the relationship the Company had with Rev. Dwayne Brock," who, she states, is "a vocal activist for the African American Community." Appellee's Supp. App. 454-55. This statement is entirely speculative. The remaining portions of the affidavit suffer from similar shortcomings.

B.

The District Court granted summary judgment on Dawley's ADA claim on the basis that he had not offered evidence tending to show that he was an "individual with a disability" within the meaning of the ADA, one of the elements of a prima facie case. See Taylor v. Phoenixville Sch. Dist., 174 F.3d 142, 151 (3d Cir. 1999). The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Dawley appears to argue that at the time of his transfer he was disabled under either the first or second definition. We find that there is insufficient evidence in the record for a jury to conclude that Dawley was disabled under either of these standards.

First, no evidence tends to show that Dawley suffered from a physical or mental impairment that substantially limited one or more of his major life activities. Indeed, the relevant evidence tends to show the contrary. In a questionnaire Dawley submitted to the

8

EEOC, for example, he stated that "the only major life activit[y] that I can not do is walk on a roof or run very fast." App. 136. He further testified at his deposition that his limitations did not affect his ability to perform job-related duties. Now, in his brief on appeal, Dawley contends that he suffers from a variety of physical limitations due to his operation. But a motion for summary judgment cannot "be defeated by factual assertions in the brief of the party opposing it." 10A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2723, at 389-90 (3d ed. 1998). A party opposing summary judgment must do so through the means contemplated by Rule 56.

Second, a "record of such impairments" exists when "a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment." 29 C.F.R. pt. 1630 App., § 1630.2(k). Here, Dawley's employment records show that (1) he left work to have an operation to remove a tumor; and (2) in September of 1992 his doctor wrote: "The patient, Shawn Dawley, may return to work without restrictions at this time. Patient has been working his regular job at Erie Insurance with no problems or symptoms." Appellee's Supp. App. 389. Thus Dawley cannot show that he had a "record of such impairments" because "[t]he impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities." Id. The fact that Dawley took a year leave from work to recover from his operation does not create a record of impairment. See Colwell v. Suffolk County Police Dept., 158 F.3d 635, 645 (2d Cir. 1998).

C.

To make out a prima facie case of retaliation, a plaintiff must show that "(1) he was engaged in protected activity; (2) he was discharged subsequent to or contemporaneously with such activity; and (3) there is a causal link between the protected

activity and the discharge." Woodson, 109 F.3d at 920. Dawley's retaliation claims fail because no reasonable jury could conclude from the evidence in the record that there was a causal connection between his EEOC filing and termination.

We have held that temporal proximity between protected conduct and an adverse employment action, absent any additional evidence of causation, may suffice to defeat summary judgment. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279-80 (3d Cir.2000). But no temporal proximity exists here; Dawley was fired three years after he filed his complaint with the EEOC. Further, Dawley has pointed to no evidence from the intervening three year period that would support an inference of retaliation.

D.

Finally, Dawley argues that Erie Indemnity violated the ADA because one of its executives fired him in order to save the company money, and thereby increase the executive's compensation under a company cost-cutting incentive plan for senior executives. The District Court granted summary judgment on the grounds that Dawley had failed to exhaust his administrative remedies.

We agree that had Dawley alleged in his complaint that defendant fired him because he was disabled in violation of the ADA, Dawley would have failed to exhaust the claim as the ADA requires. See Churchill v. Star Enterprises, 183 F.3d 184, 190 (3d Cir. 1999). Dawley never brought that claim to the attention of the EEOC, and it did not fall within the scope of his previous complaint to the EEOC alleging that Erie Indemnity terminated him in retaliation for his previous EEOC filings. See Antol v. Perry, 82 F.3d 1291, 1295-96 (3d Cir. 1996).

But Dawley failed to allege this claim in his complaint. Thus, because the claim was not properly before the District Court, the Court could not grant summary judgment

10

on it. Dawley states that he did not learn that he was fired because of his disability until discovery had occurred. If that was the case, he should have moved to amend his complaint to incorporate the new claim.[5]

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[5] We understand from Dawley's brief that he has filed a claim with the EEOC and is awaiting final agency action. We of course express no opinion as to whether res judicata would bar any future federal suit on that claim under our decision in Churchill v. Star Enterprises, 183 F.3d at 189-92.