

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-28-2006

# Tanganelli v. Talbots Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1120

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Tanganelli v. Talbots Inc" (2006). *2006 Decisions.* Paper 1534.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1534

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-1120

ANDREA TANGANELLI,
                                        Appellant

v.

TALBOTS, INC.; DONELL TROWBRIDGE;
JILL BLANCHARD JOHN DOE and ABC
CORPORATIONS 1-10 fictitious persons and entities

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil 03-cv-01954
District Judge:  The Honorable Garrett E. Brown, Jr.

Submitted Under Third Circuit LAR 34.1(a)
February 10, 2006

Before: SCIRICA, Chief Judge, BARRY and FISHER, Circuit Judges

(Opinion Filed February 28, 2006)

OPINION

BARRY, Circuit Judge

Appellant Andrea Tanganelli appeals from the District Court's grant of summary

judgment in favor of appellees Talbots, Inc. ("Talbots"), Donell Trowbridge, and Jill

Blanchard on Tanganelli's claims under the Family and Medical Leave Act ("FMLA"),

29 U.S.C. § 2601, *et seq.* The District Court had jurisdiction pursuant to 28 U.S.C. §

1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. We will affirm.

## I.

Because we write primarily for the benefit of the parties, we recount the facts and

procedural history only as they are relevant to the disposition of the case. The facts, in

the light most favorable to Tanganelli,[1] are as follows. Tanganelli was hired as an

Assistant Manager for the Talbots Kids Store in Princeton, New Jersey (the "Kids Store")

in May 2000. Her immediate supervisor was Trowbridge, the Manager, who reported to

Blanchard, the District Manager for New Jersey and Philadelphia. During her

employment, Tanganelli developed a pilondial cyst or abscess on her lower back. On

May 20, 2002, she requested and was granted medical leave to undergo surgery to remove

the cyst. Her leave began on June 10, 2002; no return date was set.

Prior to going on leave, Tanganelli was the only Assistant Manager at the Kids

Store. Talbots had been actively recruiting for some time, but had been unable to fill the

additional Assistant Manager positions. While Tanganelli was on leave, Talbots was able

---

[1] In evaluating the evidence in the context of a summary judgment motion, we "take the facts in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in [her] favor." *Doe v. County of Centre*, 242 F.3d 437, 446 (3d Cir. 2001).

to hire two additional Assistant Managers, both of whom began work in July 2002.[2]

Tanganelli returned to work on August 26, 2002.[3]  Upon returning to work, Tanganelli had a meeting with Trowbridge and Blanchard.  She was told by them that she "did not fit in" anymore and was called a "piece of driftwood."  Over the next week, they described her as "not easy to accommodate," and said that she should have expected such treatment because she "took the whole summer off."  Tanganelli concedes that her job title did not change after she returned from leave, but claims that her job responsibilities were taken away.  Specifically, she contends that she was not given keys to the store (which precluded her from opening and closing the store); she was not invited to a manager's meeting; and a schedule she was asked to prepare for the sales associates was discarded and replaced with one drawn up by Trowbridge.  Upon discovering the discarded schedule, Tanganelli resigned.

On February 14, 2004, Tanganelli filed suit in the Superior Court of New Jersey alleging violations of the New Jersey Law Against Discrimination ("NJLAD") and the FMLA.  The case was removed to the District Court.  After discovery closed, appellees moved for summary judgment.  At oral argument on the motion, Tanganelli conceded that

---

[2] Tanganelli does not appear to object to the hiring of additional Assistant Managers. She testified at her deposition that she "didn't think it was unfair that they hired two [new] assistant managers."  (App. II at 94.)

[3] Appellees claim that Tanganelli did not notify Trowbridge of her intent to return to work until the evening of August 25, 2002, a claim that Tanganelli disputed before the District Court and continues to dispute on appeal.  This dispute is not material for purposes of summary judgment.

only the FMLA claim remained viable. Accordingly, the District Court granted summary judgment on the non-FMLA claims and subsequently granted summary judgment on the FMLA claim. This appeal followed.

## II.

Our review of a district court's order granting summary judgment is plenary. *See Morton Int'l, Inc. v. A.E. Staley Mfg. Co.*, 343 F.3d 669, 679 (3d Cir. 2003). Summary judgment is appropriate if there is no issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

The dual purposes of the FMLA are to "balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(1), (2). To accomplish these goals, the FMLA contains two distinct types of provisions. The first, a series of prescriptive substantive rights for eligible employees, is often referred to as the "entitlement" or "interference" provisions. *See Churchill v. Star Enters.*, 183 F.3d 184, 192 (3d Cir. 1999); *see also* VanDeusen, *7 Labor and Employment Law* §174.02[3][a]. Eligible employees are "entitled to a total of twelve workweeks of leave during any twelve-month period" if the employee has a "serious health condition." 29 U.S.C. § 2612(a)(1)(D). Furthermore, following a qualified absence, the employee is entitled to reinstatement to the former position or an equivalent one.[4] 29 U.S.C. § 2614(a)(1). The second, "discrimination" or "retaliation"

---

[4] "An equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges,

4

provisions, provide protection against discrimination based on the exercise of FMLA rights.  *See* 29 U.S.C. § 2615(a)(1), (2); 29 C.F.R. § 825.220(c) ("An employer is prohibited from discriminating against employees . . . who have used FMLA leave.")

Tanganelli asserts claims under both sets of  provisions.  She claims that appellees violated the reinstatement requirement of the entitlement provision because she was not given the same responsibilities as an Assistant Store Manager upon her return from protected FMLA leave, and claims that appellees violated the discrimination provision by retaliating against her for taking medical leave.

**A. The Reinstatement Claim**

Tanganelli's failure to reinstate claim is based primarily on her allegation that she was not given a set of keys to open and close the store.  She admitted, however, that she was provided with keys one week after she returned to work.[5]  She also admits that her salary and benefits were unaltered, that she remained part of the "management loop," that she was given keys to the cash register (which is a responsibility given only to Assistant Managers and the Store Manager), and that she was responsible for the store's operation

_____

perquisites and status.  It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority."  29 C.F.R. § 825.215(a).

[5] In her brief to us, Tanganelli denies making any such admission and "hotly disputes that she was ever given such keys," Appellant's Br. at 3.  In her deposition, however, she clearly stated that she was given keys one week after she returned to work.  "I came back on a Monday.  I didn't have keys until the following Monday . . . . I did not have keys for a week."  (App. II at 94.)

5

when the Store Manager was absent.

Precious little remains.  The mere fact that Tanganelli was not invited to a meeting (which she was nevertheless permitted to attend and in which she participated) does not support a finding that she was not reinstated to her former position.  Nor does the allegation that the schedule she created was discarded.  "The requirement that an employee be restored to the same or equivalent job . . . does not extend to de minimis or intangible, unmeasurable aspects of the job."  29 C.F.R. § 825.215(f).

Finally, as the District Court correctly noted, Tanganelli's allegation that she was called a "piece of driftwood" does not support a claim for reinstatement because it has "no bearing on her duties and responsibilities as Assistant Manager."  (App. I at 21)

**B. The Retaliation Claim**

To establish her retaliation claim, Tanganelli must prove that: (1) she took FMLA leave, (2) she suffered an adverse employment decision, and (3) the adverse decision was causally related to her leave.  *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 147 (3d Cir. 2004).  There is no dispute that Tanganelli took FMLA leave from June through August 2002.  There is no evidence in the record, however, that she suffered an adverse employment action.

Tanganelli contends that she was constructively discharged, and thus suffered an adverse employment action.  To establish a constructive discharge, she was required to show that Talbots "knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign."  *Goss v. Exxon Office*

6

*Sys. Co.*, 747 F.2d 885, 888 (3d Cir. 1984). "Intolerability . . . is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign–that is, whether [she] would have had no choice but to resign." *Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 976 (3d Cir. 1998) (internal citations omitted). Simply put, there is nothing approaching "intolerability" here. The delay in providing Tanganelli with a set of keys, the failure to invite her to a management meeting, the disposal of the schedule she created, and the isolated comments by Trowbridge and Blanchard would not, as an objective matter, compel a reasonable person to resign.[6] We, therefore, conclude that Tanganelli has failed to establish a *prima facie* case of retaliation under the FMLA.

## III.

The order of the District Court will be affirmed.

---

[6] Tanganelli has not pointed to, and we do not see, any other action by appellees that could possibly constitute an adverse employment action.